IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CONNIE S. W., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 18-CV-98-CVE-JFJ |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the undersigned United States Magistrate Judge for a report and recommendation. Plaintiff Connie S. W. seeks judicial review of the Commissioner of the Social Security Administration's decision finding that she is not disabled. For the reasons explained below, the undersigned **RECOMMENDS** that the Commissioner's decision denying benefits be **AFFIRMED**.

**I.      General Legal Standards and Standard of Review**

A claimant for disability benefits bears the burden of proving a disability. 42 U.S.C. § 423(d)(5); 20 C.F.R. §§ 404.1512(a), 416.912(a). "Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To meet this burden, a plaintiff must provide medical evidence demonstrating an impairment and the severity of that impairment during the time of his alleged disability. 20 C.F.R. §§ 404.1512(b), 416.912(b). A disability is a physical or mental impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically

acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act only if his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (setting forth five steps in detail). "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Williams*, 844 F.2d at 750. In reviewing a decision of the Commissioner, the Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* The Court's review is based on the record, and the Court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* The Court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th

Cir. 2005). Even if the Court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 44-year-old female, applied for Title II disability insurance benefits on December 2, 2014, alleging a disability onset date of October 3, 2014. R. 14, 28. Plaintiff claimed that she was unable to work due to anxiety and lower back problems. R. 228. Plaintiff's claim for benefits was denied initially on May 4, 2015, and on reconsideration on June 29, 2015. R. 131-135, 139-141. Plaintiff then requested a hearing before an ALJ, and the ALJ conducted the hearing on February 23, 2017. R. 56. The ALJ issued a decision on May 17, 2017, denying benefits and finding Plaintiff not disabled because she was able to perform other work that exists in significant numbers in the national economy. R. 14-29. The Appeals Council denied review, and Plaintiff appealed. R. 1-4; ECF No. 2.

The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of October 3, 2014, and that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine; degenerative joint disease of both knees; right wrist pain due to prior fracture; morbid obesity; generalized anxiety disorder; and depressive disorder. R. 16. The ALJ also found Plaintiff had non-severe impairments of high blood pressure; alleged seizure disorder and/or syncope; and kidney stones. R. 17. The ALJ identified a non-medically determinable impairment of rule out panic disorder. *Id.* At step three, the ALJ considered the severity of Plaintiff's disorders, singly and in combination, and concluded that none was of such severity to result in listing-level impairments. R. 18-20.

A. **Medical Evidence**

The ALJ summarized the objective and opinion evidence in the record.[1]

1. **Right Wrist Impairment**

The record revealed that Plaintiff has a history of right wrist pain due to prior fracture that did not heal correctly. At a consultative examination performed by Kenneth Trinidad, D.O., in April 2014, Dr. Trinidad noted weakness in wrist and grip strength and tenderness over the ulnar aspect and dorsum of the wrist to palpation. R. 317. Dr. Trinidad opined that she had a 20 percent impairment to the right hand as a result of a non-union styloid fracture in the wrist, associated stiffness and crepitance in the wrist, and weakness in right wrist and grip strength. R. 318. The ALJ gave little weight to Dr. Trinidad's opinions, because they covered disability issues germane only to worker's compensation matters. R. 24.

At a consultative examination performed by Abrar Adil, D.O., in March 2015, Plaintiff stated her wrist pain was much improved after several steroid injections, and she reported only minimal 3/10 pain to the right dorsal wrist. R. 419. On examination, Dr. Adil noted Plaintiff had no tenderness to percussion over the right radial styloid, and her wrist and finger ranges of motion were full bilaterally with minimal signs of discomfort. R. 420, 424. Dr. Adil noted Plaintiff could manipulate small objects and grasp tools. R. 424. MRI of the right wrist in June 2015 showed a moderate amount of soft tissue edema adjacent to the ulnar styloid, with a small ununited ulnar styloid process fracture. R. 24, 537.

---

[1] The undersigned limits this discussion of evidence to Plaintiff's wrist and back impairments, as they are the only impairments relevant to Plaintiff's allegations of error. To the extent Plaintiff complains about the ALJ's inadequate discussion of additional impairments, Plaintiff fails to develop such arguments in any coherent way. The arguments are therefore waived. *See Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.").

Plaintiff underwent repair surgery on her right wrist in September 2016. R. 23, 545. In January 2017, her wrist surgeon noted she was slowly improving from surgery but still had swelling on the ulnar side of the wrist. R. 547. Her surgeon allowed her to work with a ten-pound weight restriction at that time. *Id.* At a visit with her physical therapist in January 2017, Plaintiff reported improvement in her right wrist range of motion, strength, and mobility but noted soreness along the ulnar wrist and into the ring and small finger, which increased with activity. R. 501. She reported she could make a fist but had difficulty gripping, and she denied any numbness or tingling. *Id.* At a later visit with the physical therapist in January 2017, Plaintiff reported continued improvements in her right wrist strength, range of motion, and mobility. R. 54. Plaintiff reported infrequent sharp pains with multidirectional movements, but she was able to perform more daily activities, such as light lifting, without difficulty. *Id.* She reported that gripping was improved, although she dropped things occasionally, and her pain was 4/10 at the visit and 10/10 at worst. *Id.* The therapist noted very mild swelling over the ulnar wrist with mild, vague soreness over the ulnar wrist and improved right wrist and elbow strength of 4+/5 versus 3+/5 at initial visit. R. 54-55.

On February 8, 2017, Plaintiff's surgeon noted Plaintiff still had pain on the ulnar side of the wrist, with pain into the fourth and fifth metacarpals. R. 50. She could make a full fist with full extension of all digits and full radial and ulnar deviation and full pro/supination. *Id.* He recommended a permanent 20-pound lifting restriction. *Id.*

On February 22, 2017, Plaintiff's primary care physician, Curt Coggins, M.D., completed a physical RFC assessment of Plaintiff. R. 318-535. Dr. Coggins opined that Plaintiff could lift and carry up to 20 pounds occasionally and up to five pounds frequently, and she had no limitations in use of her hands for repetitive movements, including grasping. R. 532-533. He further opined

5

that Plaintiff could continuously handle and finger bilaterally. The ALJ gave little weight to Dr. Coggins' opinions, finding that Dr. Coggins' limitations appeared inconsistent and unsupported by the medical evidence. R. 26-27. At the hearing held in February 2017, Plaintiff testified she still experienced pain, weakness, and popping in her wrist. R. 77. However, Plaintiff testified she could still use both hands for short periods. R. 78.

### 2. Back Impairments

With regard to Plaintiff's complaints of pain, the ALJ noted that physical examinations and imaging results revealed modest findings. R. 22-26. In April 2014, Dr. Trinidad's consultative examination revealed lumbar spine tenderness and spasm, with negative straight-leg raising. R. 318. An MRI scan of the lumbar spine performed in 2013 revealed mild scoliosis of the thoracolumbar spine and mild to moderate facet joint degenerative changes, along with an incidental Tarlov cyst on the right at S1-S2.[2] R. 302. In August 2015, Plaintiff underwent another MRI of the lumbar spine, which revealed mild discogenic changes of the lumbar spine and a sacral cyst at S1-S2, with no focal disc abnormality, no significant central canal stenosis, and no neural foraminal narrowing. R. 452. In November 2016, Plaintiff obtained a third MRI of the lumbar spine, which showed no significant abnormality, moderate degenerative disc and facet joint changes, and a right S2 Tarlov cyst unchanged from the previous study. R. 447. In September 2016, a nerve conduction velocity study and EMG of the lower extremities revealed normal examination results, despite Plaintiff's complaints of back pain, numbness, and tingling of all extremities. R. 461.

---

[2] "Tarlov cysts are fluid-filled nerve root cysts found most commonly at the sacral level of the spine." American Association of Neurological Surgeons, https://www.aans.org/en/Patients/Neurosurgical-Conditions-and-Treatments/Tarlov-Cyst (last visited May 9, 2019).

6

At Dr. Adil's consultative examination in March 2015, Dr. Adil observed Plaintiff moved about the exam room easily, had relatively well-preserved spinal range of motion, negative straight-leg raising bilaterally in seated and supine position, normal toe and heel walking, and normal gait. R. 420. Dr. Adil assessed her with likely lumbosacral sprain with full strength and no radiculitis. R. 24, 420.

In his medical source statement, Dr. Coggins opined that Plaintiff could sit four hours, stand two hours, and walk one hour in an eight-hour day. R. 532. Plaintiff could frequently carry up to five pounds and occasionally lift and carry up to 20 pounds. *Id.* Plaintiff could never bend, squat, crawl, climb, or reach. R. 533. Her ability to work on a sustained basis and to concentrate would be impaired by pain and her medication side effects. R. 533-534. Plaintiff would likely miss more than three days of work per month. R. 534. Dr. Coggins noted that the Tarlov cyst on Plaintiff's sacrum and the resulting neurologic pain would require lying down periodically during the short work hours she could sustain. R. 535. The ALJ found Dr. Coggins' opinions, including his postural and other limitations, to be completely unsupported in the medical record. R. 26-27.

Agency reviewer Judy Marks-Snelling, D.O., opined Plaintiff could perform a full range of light work except occasionally climb ramps, stairs, ladders, ropes, or scaffolds. R. 106, 111. Plaintiff could occasionally balance, stoop, kneel, crouch, or crawl. R. 106. Agency reviewer David Coffman, M.D., reviewed and affirmed Dr. Marks-Snelling's assessment. R. 124, 129. The ALJ gave "very substantial weight" to these opinions, finding they were supported by the weight of the evidence, even though the ALJ gave more restrictions than the agency reviewers. R. 27.

At the hearing, Plaintiff testified she had a history of continual throbbing back pain, which she described as sharp at times and sometimes a sickening feeling. R. 72. She reported swelling in her lower back due to nerve pain, which felt like she was sitting on a rock. R. 73. She reported

Dr. Coggins told her she had a cyst on her sacrum that caused the pain. *Id.* She treated the pain with morphine and other narcotic medications. R. 74. She complained of numbness and stabbing or shooting pain with sitting or standing for too long. *Id.* She could stand for 30 minutes at one time, and she had difficulty walking. R. 74-75. She testified to switching from sitting, standing, walking, and lying down "quite a bit." R. 77.

### B. RFC Assessment and Step-Five Findings

After evaluating the medical and psychological evidence, Plaintiff's statements, and the agency medical and psychological assessments, the ALJ concluded that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a)[3] with the following additional limitations:

> No climbing of ladders, ropes, or scaffolds. Climbing ramps or/stairs [sic], stooping, crouching, crawling, kneeling, and balancing, can be done occasionally. No exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions (not all-moving machinery is dangerous-such as machinery where moving parts are shielded). Handling and fingering limited to frequent bilaterally. Due to mental impairments, the claimant can understand, remember, and carry out simple or intermediate level instructions, and perform simple and some tasks of intermediate level difficulty under routine supervision such that she is capable of doing simple or at most semi-skilled work. The claimant can relate to supervisors and coworkers on a superficial work related basis and can adopt [sic] to a work situation. The claimant can have only occasional contact with the general public.

R. 20. The ALJ found that Plaintiff was unable to perform her past relevant work as a restaurant manager and retail store manager. R. 27-28. Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step five that Plaintiff could perform other sedentary work, such as Clerical Mailer, Assembler, and Stuffer. R. 28-29. Based on the VE's testimony, the ALJ

---

[3] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

8

concluded these positions existed in significant numbers in the national economy.  R. 29.  Accordingly, the ALJ concluded Plaintiff was not disabled.

**III.   Issues**

Plaintiff raises two points of error in her challenge to the denial of benefits: (1) "The ALJ erred at step five of the sequential evaluation process, as his RFC is not supported by the record"; and (2) "The ALJ failed to properly consider the medical source evidence."  ECF No. 17.

**IV.   Analysis**

    **A.   The ALJ Reasonably Considered and Evaluated the Evidence Regarding Plaintiff's Right Wrist Impairments**

In the first allegation of error, Plaintiff argues the ALJ erred in formulating the RFC, because the RFC failed to include additional limitations related to her right wrist and hand.[4]  Specifically, Plaintiff complains the ALJ failed to account for findings of weakened grip strength by Dr. Trinidad, Plaintiff's physical consultative examiner for worker's compensation purposes.[5]  Plaintiff also alleges the ALJ failed to consider that, at the time the record closed, she was still recovering from wrist surgery, was limited to lifting ten pounds while recovering, and was undergoing physical therapy for her wrist.  Plaintiff argues that, given Dr. Trinidad's findings and her limitations following surgery, the ALJ should have limited her to only occasional handling and fingering.  The limitation is significant, Plaintiff contends, because it would rule out the three jobs provided by the VE as consistent with the RFC.  Plaintiff's argument is not compelling.

---

[4] Plaintiff also contends in this section that the ALJ failed to account for all of the limitations proposed by Dr. Coggins in his medical source statement.  Because the argument overlaps with Plaintiff's second allegation of error, the undersigned will address it under that heading.

[5] In her opening brief, Plaintiff also contends Dr. Trinidad noted decreased reflexes during the examination.  ECF No. 17 at 4.  In her reply brief, Plaintiff acknowledges that Dr. Trinidad did not in fact note decreased reflexes and apologizes for the error.  ECF No. 20 at 2.

The ALJ reviewed the medical and opinion evidence pertaining to Plaintiff's right wrist impairment. R. 23-24. He concluded that, based on the medical evidence, Plaintiff's wrist should heal and eventually "return to full function she had prior to surgery." R. 23. The medical records support the ALJ's conclusion. MRI records showed moderate swelling and a small ununited ulnar styloid process fracture. R. 537. Dr. Trinidad opined prior to her wrist surgery that she had a 20 percent impairment to her right hand and noted tenderness, crepitance, and weakness in wrist and grip strength; however, the ALJ gave these worker's compensation opinions little weight. R. 317-318. Plaintiff later reported to consultative examiner Dr. Adil that her wrist pain had improved after steroid injections, and Dr. Adil noted no tenderness, full range of motion with minimal signs of discomfort, and ability to manipulate objects and grasp tools. R. 419, 420, 424. After her wrist surgery, Plaintiff reported improvement in her right wrist range of motion, strength, and mobility but ongoing soreness. R. 54, 501. Her physical therapist noted very mild swelling over the ulnar wrist, mild, vague soreness, and improved right wrist and elbow strength of 4+/5 versus 3+/5 at initial visit. R. 54-55. In February 2017, Plaintiff's surgeon noted Plaintiff still had wrist pain, and he recommended a permanent 20-pound lifting restriction. R. 50.

These records provide substantial support for the ALJ's finding that Plaintiff could frequently handle and finger. Contrary to Plaintiff's argument, the ALJ did not "completely ignore" Dr. Trinidad's observations of weakened wrist and grip strength. *See* R. 24 (noting Dr. Trinidad's finding of "weakness in wrist strength and grip strength"). Instead, the ALJ concluded Dr. Trinidad's findings, which occurred prior to Plaintiff's wrist surgery and pertained to worker's compensation, were not determinative of Plaintiff's hand and wrist capabilities. R. 23-24, 27. The ALJ also noted that Plaintiff underwent surgery and that, as of January 4, 2017, she was subject to a ten-pound weight restriction and no frequency-of-use restrictions. R. 23. This limitation is

10

consistent with the sedentary work restriction of a ten-pound lifting limit, which the ALJ incorporated into the RFC. *See* R. 20; 20 C.F.R. 404.1567(a).

Plaintiff does not explain or otherwise support her contention that the ALJ should have limited her to occasional handling and fingering, and the records do not support this limitation. The ALJ already considered the evidence Plaintiff cites in support of the proposed limitations, and it would be inappropriate for the Court to re-weigh that evidence.[6] *See Hackett*, 395 F.3d at 1172. Accordingly, Plaintiff's first allegation of error fails.

### B. The ALJ Properly Considered the Medical Source Evidence

In the second allegation of error, Plaintiff argues that the ALJ failed to properly consider the RFC statement submitted by Plaintiff's primary care physician, Dr. Coggins. R. 532-535. When a medical opinion comes from a treating source, the ALJ must give it controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). If the ALJ finds the opinion is deficient in either respect, then the ALJ must consider several factors in determining the weight to be given to the medical opinion. *See* 20 C.F.R. § 404.1527(c). Those factors include: (1) the examining relationship; (2) the treatment relationship; (3) the length of the treatment relationship and the frequency of examinations; (4) the nature and extent of the treatment relationship; (5) how well the opinion is supported; (6) its consistency with other evidence; and (7) whether the opinion is from a specialist. *Id.* If, after considering the relevant factors, the ALJ rejects the opinion completely, "he must then give specific, legitimate reasons for doing so."

---

[6] In the reply brief, Plaintiff points out that records show Plaintiff's grip strength decreased between February 2013 and April 2014. ECF No. 20 at 2. While the ALJ did not specifically note the reduction in grip strength, he generally noted weakness in grip strength and cited the relevant records. R. 24, 316-324. The undersigned identifies no error in this discussion.

11

*Watkins*, 350 F.3d at 1301 (quotations omitted). In all cases, the ALJ must give "good reasons" for the weight assigned to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *Watkins*, 350 F.3d at 1301.

Here, the ALJ found that Dr. Coggins' opinions in the first part of his statement, regarding Plaintiff's ability to sit, stand, walk, lift, and carry, were mostly consistent with the ability to perform sedentary work, although Dr. Coggins' opinions were somewhat inconsistent with a sedentary exertion level.[7] R. 26, 532. However, the ALJ found that Dr. Coggins' later opinions, that Plaintiff could not complete a normal work day, would be frequently absent, and would have certain postural and other limitations, were "completely unsupported." R. 27. As a result, the ALJ gave "little weight" to any of Dr. Coggins' opinions, even those that supported a sedentary RFC. *Id.* The ALJ further found Dr. Coggins' opinion that Plaintiff could not work due to chronic pain was unsupported in his treatment records, beyond Plaintiff's subjective claims. R. 26.

### 1. The ALJ Adequately Explained His Reasons for Rejecting Dr. Coggins' Opinions

Plaintiff first contends that the ALJ's reasons for according "little weight" to Dr. Coggins' opinions were improper, and the ALJ should have re-contacted Dr. Coggins if his opinions were unclear. However, the undersigned finds the ALJ adequately explained his reasons for giving Dr. Coggins' opinions little weight. The ALJ reasonably found Dr. Coggins' opinions were not entitled to controlling weight, because he concluded they were inconsistent with the other substantial evidence in the record. In particular, the ALJ noted that Plaintiff's physical examinations and imaging results have remained modest over time, and her back impairments have

---

[7] The ALJ noted that Dr. Coggins' sit/stand/walk RFC added up to only seven hours, rather than eight hours as required by the RFC form. R. 26, 532. The ALJ also noted Dr. Coggins' carrying assessment was inconsistent with sedentary work, in that Dr. Coggins opined Plaintiff could be on her feet for a longer time than consistent with sedentary work and could frequently (up to 66% of work day) carry up to five pounds, which is a longer time than required for sedentary work. *Id.*

been treated conservatively. R. 22, 26, 381-382, 394-395, 399-400, 433-439, 466, 549-550, 554-557, 561-562, 584, 600, 604. The ALJ also explained that Dr. Coggins' own treatment records, apart from Plaintiff's subjective claims, did not support Dr. Coggins' opinion that Plaintiff could not work due to chronic pain. R. 26. *See also* R. 392-415, 433-444, 482-488; *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009) (ALJ reasonably discounted treating physician's opinion that was unsupported by physician's examination notes and that was inconsistent with other medical evidence). Contrary to Plaintiff's argument, the ALJ did not "ignore" Dr. Coggins' proposed limitations regarding her frequent need to be absent from work or inability to complete a work day. ECF No. 17 at 5. Rather, the ALJ generally discounted Dr. Coggins' opinions in that regard, because they were unsupported in the medical record. R. 26-27.

The ALJ was not required to explicitly review every regulatory factor in reaching his conclusion that Dr. Coggins' opinion should be given little weight. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (noting that ALJ is not required to "apply expressly" each relevant factor in weighing a medical opinion). The ALJ satisfied his duty to be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Watkins*, 350 F.3d at 1300 (internal quotation marks omitted). Under these circumstances, the ALJ had no duty to re-contact Dr. Coggins for further explanation of his opinions. *See* 20 C.F.R. § 404.1520b(b) (ALJ may re-contact a medical source when ALJ cannot make a disability determination, because evidence is insufficient or inconsistent).

Plaintiff accuses the ALJ of improperly picking and choosing evidence that supported his position. However, the ALJ gave the entirety of Dr. Coggins' opinions little weight, including those that supported a sedentary RFC. R. 27. Plaintiff appears to be asking the Court to substitute

its judgment for that of the ALJ, which the Court may not do. *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). The undersigned finds no error in the ALJ's weighing of Dr. Coggins' opinions.

### 2. The ALJ Adequately Explained His Reasons for Giving Greater Weight to the Agency Reviewers

Second, Plaintiff argues that Dr. Coggins' opinions should have been accorded more weight than those of the agency reviewers, Dr. Marks-Snelling and Dr. Coffman, because the agency reviewers did not meet or examine Plaintiff. Plaintiff's argument is not persuasive. The ALJ was not required to give greater weight to Dr. Coggins' opinions over the opinions of the agency reviewers. The ALJ stated that he gave "very substantial weight" to the agency physical opinions because they were supported by the weight of the evidence. R. 27 (citing R. 547-565). Given the ALJ's finding that Dr. Coggins' opinions were inconsistent with the medical evidence and unsupported by Dr. Coggins' own treatment records, the ALJ adequately explained his reasons for according greater weight to the agency reviewers' opinions.

Additionally, to the extent Plaintiff argues the ALJ should have given less than "very substantial" weight to the agency reviewers' opinions because they did not examine her, Plaintiff's position is not supported in the regulations. *See* 20 C.F.R. § 404.1513a(b)(1) (providing that ALJs "are not required to adopt any prior administrative medical findings but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate, because our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation"). The ALJ did not err in giving the agency reviewers' opinions very substantial weight.

14

### 3. The ALJ's Discussion of Plaintiff's Tarlov Cyst Was Adequate

Finally, Plaintiff contends the ALJ erred by incorrectly stating that Dr. Coggins did not mention the effects of Plaintiff's caudal/Tarlov cyst. *See* R. 25. Plaintiff is correct that the ALJ misstated Dr. Coggins' findings. In fact, Dr. Coggins explained in his RFC statement that Plaintiff's Tarlov cyst caused her neurologic pain that would require periodically lying down, that the area of the cyst was tender to palpation, and that MRI supported these findings. R. 535.

However, the undersigned rejects Plaintiff's argument that this mistake amounts to reversible error. The ALJ still gave valid reasons, supported by substantial evidence, for giving little weight to Dr. Coggins' opinions. *See* R. 25-26. In particular, the ALJ correctly noted that Dr. Coggins' treatment records did not contain any diagnosis or treatment for the cyst. R. 25. Plaintiff argues that notes from John Main, M.D., provide evidence of the significance of the caudal cyst. R. 549-550. However, Dr. Main merely stated that the caudal cyst was an "incidental finding." R. 550. In any event, the ALJ noted Dr. Main's findings regarding the cyst in support of his conclusion that Plaintiff's back impairments were not disabling. R. 22. Accordingly, the ALJ's mistake regarding Dr. Coggins' notes is not reversible error.[8]

### RECOMMENDATION

The undersigned **RECOMMENDS** that the Commissioner's decision be **AFFIRMED.**

### OBJECTION

In accordance with 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b)(2), a party may file specific written objections to this report and recommendation. Such specific written

---

[8] Plaintiff speculates the ALJ discredited Dr. Coggins' notes regarding the Tarlov cyst, because some other records refer to the cyst as a "caudal" or "sacral" cyst. *See* R. 302 (Tarlov cyst), 447 (Tarlov cyst), 452 (sacral cyst), 549-550 (caudal cyst). There is nothing in the ALJ's decision, however, to suggest that the ALJ found this distinction meaningful. Accordingly, Plaintiff's argument is not compelling.

15

objections must be filed with the Clerk of the District Court for the Northern District of Oklahoma by May 29, 2019.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to

> determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

*Id.*; *see also* 28 U.S.C. § 636(b)(1). The Tenth Circuit has adopted a "firm waiver rule" which "provides that the failure to make timely objections to the magistrate's findings or recommendations waives appellate review of both factual and legal questions." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for *de novo* review by the district court or for appellate review.

**SUBMITTED** this 15th day of May, 2019.

*[signature: Jodi F. Jayne]*
JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT